IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| JONATHAN RICHIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:24-cv-00218-JB-MU |
| ) | |
| QUALITY CARRIERS, INC., *et al.*, ) | Removed from the Circuit Court |
| ) | of Mobile County, Alabama |
| Defendants. ) | Case No.: 02-CV-2024-901315 |

**FIRST AMENDED COMPLAINT**

COMES NOW the Plaintiff, Jonathan Richie (hereinafter "Plaintiff"), and files this First Amended Complaint against the Defendants, Quality Carriers, Inc. Girard Equipment, Inc., Gulf Coast Express Carriers, Corp., Brenner Tank, LLC, and Michael Jennings (collectively hereinafter "Defendants") and other fictitious parties as set out herein. In support thereof, Plaintiff states the following:

**NATURE OF THE CASE**

1. This case arises from a single event, nitric acid spill in Creola, Alabama on May 13, 2024. At the aforesaid time and place, the Defendants acts and omissions led to the spill of over 5,000 gallons of nitric acid.

2. Defendants, Wabash National Corporation (hereinafter "Wabash") and Brenner Tank, LLC, (hereinafter "Brenner") are in the business of manufacturing and selling tank trailers that haul hazardous materials. Defendants Wabash and Brenner gives their

customers the option to purchase trailers fitted with safety valves manufactured by Defendant Girard Equipment, Inc. (hereinafter "Girard"). The safety valves manufactured by Girard have a known history of failure, especially when used in conjunction with hauling hazardous materials such as nitric acid.

3. Defendant Gulf Coast Express Carriers, Corp. (hereinafter "Gulf Coast Express") is in the business of leasing tank trailers. Gulf Coast Express purchased tank trailers from Wabash and Brenner and specifically ordered its tank trailers fitted with safety valves manufactured by Girard, which Gulf Coast Express knew to have a history of failure, especially when used in conjunction with hauling hazardous materials such as nitric acid.

4. Defendant Quality Carriers, Inc. (hereinafter "Quality Carriers") is an affiliate partner of Gulf Coast Express and is in the business of hauling hazardous materials in tank trailers leased from its affiliate partner, Gulf Coast Express, and Quality Carriers uses the tank trailers manufactured by Brenner fitted with safety valves manufactured by Girard, which have a known history of failure, especially when used in conjunction with hauling hazardous materials such as nitric acid.

5. Defendant Michael Jennings (hereinafter "Jennings") is a driver for Quality Carriers and was hauling a tank trailer manufactured by Brenner, fitted with a Girard Safety valve, owned by Gulf Coast Express and leased to Quality Carriers when the Girard safety valve did in fact fail while hauling nitric acid.

6. The Defendants' combined and concurring wrongdoing resulted in the acid spill and caused the injuries and damages suffered by the Plaintiff. Defendants' wrongdoing is set forth in more detail below.

## PARTIES

8. Plaintiff, Jonathan Richie (hereinafter "Richie"), is over the age of nineteen (19) and is a citizen of the State of Alabama and lives in Mobile County, Alabama.

9. Quality Carriers, Inc., is an Illinois corporation doing business in Alabama with its principal place of business at 1208 E. Kennedy Blvd., Suite 132, Tampa, FL 33602. It may be served via its registered agent, CT Corporation System, 2 North Jackson Street Suite 6, Montgomery, Alabama 36104.

10. Girard Equipment, Inc., is a Florida corporation doing business in Alabama with its principal place of business at 3455 Airport West Drive, Vero Beach, FL 32960. It may be served via its registered agent, Don Jellie, 3455 Airport West Drive, Vero Beach, FL 32960-7927.

11. Gulf Coast Express Carriers, Inc., is a Louisiana corporation doing business in Alabama with its principal place of business at 13919 River Road, Suite 330, Luling, LA 70070-6233. It may be served via its registered agent, Kevin Joseph Gautreau, 38093 Hwy. 18 West, Donaldsonville, LA 70346.

12. Brenner Tank, LLC, is a Wisconsin limited liability company doing business in Alabama with its principal place of business at 3900 McCarty Lane, Suite 220, Lafayette, Indiana

47905. It may be served via its registered agent, Corporate Creations Network, Inc., 4650 W. Spencer St., Appleton, WI 54914-9106.

13. Wabash National Corporation is a Delaware Corporation doing business in Alabama. It may be served via its register agent, Corporate Creations Network, Inc., 1501 Concord Pike, Suite 201, Wilmington, DE 19803.

14. Michael Jennings, is a citizen of the State of Mississippi and lives in Magnolia, Mississippi. He may be served with process at 175 Poplar Street, Magnolia, Ms. 39652.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this action pursuant to 28 U.S.C §1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and complete diversity exists between the parties.

16. Defendant Jonathan Richie is a citizen of the State of Alabama.

17. Defendant Quality Carriers, Inc., is an Illinois corporation.

18. Defendant Girard Equipment, Inc., is a Florida corporation.

19. Defendant Gulf Coast Express Carriers, Inc., is a Louisiana corporation.

20. Defendant Brenner Tank, LLC, is a Wisconsin limited liability company.

21. Defendant Wabash National Corporation is a Delaware Corporation and is the parent company for and is the sole member of Brenner Tank, LLC. Wabash National Corporation employees systematically and continuously do business on behalf of and as agents of Wabash National Corporation, Brenner Tank Services, LLC, and Brenner Tank,

      LLC with Gulf Coast Express Carriers, Inc., Quality Carriers, Inc. and the Plaintiff at the Creola, Alabama location.

22. Defendant Michael Jennings, is a citizen of the State of Mississippi.

23. Venue is proper in this district under 28 U.S.C. §1391(b) as each the defendants transact business in the State of Alabama and the events or omissions giving rise to the claims occurred in this district.

## FACTS SUPPORTING CLAIMS

24. On May 13, 2024, Jennings, a truck driver for Quality Carriers picked up a load of nitric acid from CF Industries, Inc., located at 4608 Hwy. 49 East, Yazoo, MS 39040. Jennings drove the load of nitric acid to Ascend Performance Materials, located at 3000 Old Chemstand Rd., Cantonment, FL 32533. The Ascend plant in Cantonment, Florida refused to accept the nitric acid because the tank Jennings was hauling appeared to have a defective and leaking safety valve.

25. At that point Jennings was supposed to notify a safety company called Skytank to handle the hazardous situation. Instead of following policies and procedures by contacting Skytank, Jennings drove the tank trailer filled with nitric acid and with the defective safety valve between 65 and 75 miles (depending on the route chosen) through heavy traffic, to a repair shop owned by Gulf Coast Express, which is located at 10837 Hwy. 43, Creola, AL 36525.

26. Gulf Coast Express contracts with Gulf State Truck & Trailer Repair to provide mechanics that work at Gulf Coast Express' repair shop located at 10837 Hwy. 43, Creola, AL 36525.

27. Richie is an employee of Gulf States Truck & Trailer Repair, and on May 13, 2024, he was assigned as the shop supervisor at the repair shop owned by Gulf Coast Express which is located at 10837 Hwy. 43, Creola, AL 36525.

28. When Jennings arrived at the Gulf Coast Express repair shop in Creola, Alabama, on or about May 13, 2024, at 8:30 a.m., there were two mechanics working at the shop. Jennings request that the mechanics repair the faulty valve. One of the mechanics called his shop supervisor, Richie, advised Richie of the situation. Richie told the mechanics that he was close and not to touch the tank trailer or the valve.

29. When Richie arrived at the Gulf Coast Express repair shop in Creola, Jennings was agitated and indicated he was in a hurry to get the valve repaired. It was raining, and the power was out at the repair shop. Richie told Jennings that they could not fix the valve until it stopped raining because water would react with nitric acid if any leaked out.

30. Tanker trailers used to haul hazmat materials like the one Jennings was hauling are equipped with both an internal and external safety valve. The internal valve must first be checked to ensure it is working properly before the external valve can be removed.

31. For some reason unknown reason, Jennings removed the external Girard valve himself causing thousands of gallons of nitric acid spill out onto the wet ground. Jennings then went to the front fender of the Brenner tank trailer and broke off the emergency brake,

which was supposed to stop the flow of the nitric acid by engaging the internal Girard valve, but the valve was defective and failed to stop the flow of nitric acid. Approximately 5,500 gallons of nitric acid spilled onto the wet ground in the rain.

32. Some of the nitric acid flowed into the shop, trapping the people in the shop inside. Hazardous, noxious fumes filled the air of the shop and the air outside as an orangish red chemical cloud began to rise into the air. The Plaintiff and other mechanics in the shop were able to escape from a side door in the shop.

33. The Creola Fire Department and Saraland Hazmat Team both responded to the nitric acid spill.

34. EMS officials instituted a shelter in place area of two miles in every direction because of the hazardous and noxious chemical cloud in the sky created by the nitric acid spill.

35. Each Defendant does business in Mobile County, Alabama and acted in concert with each other and with other, separate entities and persons to create a hazardous and unsafe environment in which to haul hazardous materials and in this case specifically nitric acid.

36. Defendants Quality Carriers and Gulf Coast Express have operated business locations in Alabama for several years just prior to and during the nitric acid spill.

37. Defendant Wabash is the parent company and the sole member for Defendant Brenner.

38. Defendants Wabash and Brenner sold parts for their trailers to the Plaintiff's company where it operated in Creola, Alabama for years.

39. Defendants Wabash and Brenner had a general manager and a regular salesperson who dealt with the Plaintiff at his location in Creola, Alabama on a continuous and systematic basis.

40. Brenner trailers are one of the main types of trailers that operate in Alabama, and they have done so for at least twenty (20) years.

41. Defendant Gulf Coast Express owns at least 15 Brenner trailers that haul products out of its Creola, Alabama location, and Plaintiff works on Brenner trailers at that location almost every workday.

42. There are Brenner trailers for sale all over the state of Alabama.

43. Prior to the nitric acid spill made the basis of this case, Brenner trailers fitted with Girard valves have knowingly failed when used in conjunction with halting nitric acid.

## **FIRST CAUSE OF ACTION**

### **NEGLIGENCE**

44. Tractor trailers operating in Alabama as common carriers, are held to a heightened duty of care. This heightened duty stems from their role in transporting goods for hire. Common carriers are expected to exercise the highest degree of care consistent with the practical operation of their vehicles to ensure the safety of others on the road, including other drivers, and pedestrians.

45. This duty of care goes beyond that of ordinary negligence. Common carriers must take all necessary precautions to prevent accidents and ensure the safety of their operations. This

means adhering to all traffic laws, maintaining their vehicles in proper working condition, and being especially cautious in their driving behaviors.

46. This heightened duty is in line with the general principle that those who transport goods for a fee are obligated to exercise a higher level of diligence and care than private individuals or entities who are not engaged in such commercial activities.

47. When a common carrier, such as a tractor-trailer, is hauling hazardous materials in Alabama, the heightened duty of care becomes even more stringent due to the increased risk associated with the materials being transported. The presence of hazardous materials significantly raises the potential for harm in the event of an accident, so the duty of care required of the carrier is correspondingly elevated.

48. Common carriers transporting hazardous materials must strictly adhere to all applicable federal, state, and local regulations, such as those set forth by the U.S. Department of Transportation (DOT) and the Environmental Protection Agency (EPA). This includes proper labeling, handling, storage, and documentation of hazardous materials, as well as compliance with specific routing and operational restrictions designed to minimize risk.

49. The carrier must ensure that the vehicle is in optimal condition, conducting frequent and thorough inspections to prevent mechanical failures that could lead to accidents. Given the dangers of hazardous materials, even minor mechanical issues could result in catastrophic consequences.

50. Drivers of vehicles carrying hazardous materials must possess the necessary qualifications, including appropriate endorsements on their commercial driver's license

(CDL). They must also receive specialized training on handling and transporting hazardous materials safely, including emergency response procedures in case of a spill or accident.

51. Carriers must have robust emergency response plans in place, including having necessary spill containment equipment on board and clear procedures for responding to accidents involving hazardous materials. This preparedness reflects the heightened duty to protect the public and the environment from potential harm.

52. Wabash National Corporation and Brenner had a duty to sell its customers tankers that were free from known defect.

53. Wabash National Corporation and Brenner had a heightened, as described above, to sell its customers tankers that were free from known defect.

54. Wabash National Corporation and Brenner breached their duty by selling tankers equipped with valves that had a history of being defective to Gulf Coast Express.

55. Gulf Coast Express had a duty to lease tankers that were free from known defect to its affiliate company, Quality Carriers.

56. Gulf Coast Express had a heightened duty, as described above, to lease tankers that were free from known defect to its affiliate company, Quality Carriers.

57. Gulf Coast Express breached its duty by leasing tankers fitted with valves that had a known history of being defective to its affiliate company, Defendant, Quality Carriers.

58. Quality Carriers had a duty to use tankers free from known defect when it hauled hazardous materials and to haul them safely and in a manner that did not harm others.

59. Quality Carriers had a heightened duty, as described above, to use tankers free from known defect when it hauled hazardous materials and to haul them safely and in a manner that did not harm others.

60. Quality Carriers breached its duty by using a tanker fitted with a valve known to fail when hauling hazardous materials such as nitric acid and hauled those materials in an unsafe manner. Quality Carriers further breached its duty by not handling the leaking Girard valve in a safe manner.

61. Jennings had a duty to haul his load safely and to follow safety protocols when he was informed of a potential failed and leaking valve while hauling nitric acid.

62. Jennings had a heightened duty, as described above, to haul his load safely and to follow safety protocols when he was informed of a potential failed and leaking valve while hauling nitric acid.

63. Jennings breached his duty when he did not contact Skytank, when he hauled a tanker full of nitric acid knowing it had a defective valve and when he pulled the external valve while at the shop in Creola, Alabama.

64. All Defendants had a duty to not put into the stream of commerce defective valves or tankers equipped defective valves when used in conjunction with transporting hazardous materials, to wit, nitric acid.

65. All Defendants had a heightened duty, as described above, to not put into the stream of commerce defective valves or tankers equipped defective valves when used in conjunction with transporting hazardous materials, to wit, nitric acid.

66. Defendants breached that duty by placing into commerce and/or using a tanker fitted with a valve that had a known history of being defective.

67. Defendants' negligence proximately caused the spilling of over 5,000 gallons of nitric acid in Creola, Alabama.

68. Defendants' negligence proximately caused injuries and damages to the Plaintiff.

69. Plaintiff suffered injuries and damages as set out in the factual allegations of this complaint including physical injuries, damage to property, and economic loss.

70. Plaintiff seeks recovery for all damages and losses proximately caused by the Defendants' nitric acid spill.

WHEREFORE, premises considered, Plaintiff seeks to recover all damages allowed under the law plus legal interest and fees.

## SECOND CAUSE OF ACTION

### WANTONNESS

71. Tractor trailers operating in Alabama as common carriers, are held to a heightened duty of care. This heightened duty stems from their role in transporting goods for hire. Common carriers are expected to exercise the highest degree of care consistent with the practical operation of their vehicles to ensure the safety of others on the road, including other drivers, and pedestrians.

72. This duty of care goes beyond that of ordinary negligence. Common carriers must take all necessary precautions to prevent accidents and ensure the safety of their operations. This

means adhering to all traffic laws, maintaining their vehicles in proper working condition, and being especially cautious in their driving behaviors.

73. This heightened duty is in line with the general principle that those who transport goods for a fee are obligated to exercise a higher level of diligence and care than private individuals or entities who are not engaged in such commercial activities.

74. When a common carrier, such as a tractor-trailer, is hauling hazardous materials in Alabama, the heightened duty of care becomes even more stringent due to the increased risk associated with the materials being transported. The presence of hazardous materials significantly raises the potential for harm in the event of an accident, so the duty of care required of the carrier is correspondingly elevated.

75. Common carriers transporting hazardous materials must strictly adhere to all applicable federal, state, and local regulations, such as those set forth by the U.S. Department of Transportation (DOT) and the Environmental Protection Agency (EPA). This includes proper labeling, handling, storage, and documentation of hazardous materials, as well as compliance with specific routing and operational restrictions designed to minimize risk.

76. The carrier must ensure that the vehicle is in optimal condition, conducting frequent and thorough inspections to prevent mechanical failures that could lead to accidents. Given the dangers of hazardous materials, even minor mechanical issues could result in catastrophic consequences.

77. Drivers of vehicles carrying hazardous materials must possess the necessary qualifications, including appropriate endorsements on their commercial driver's license

(CDL). They must also receive specialized training on handling and transporting hazardous materials safely, including emergency response procedures in case of a spill or accident.

78. Carriers must have robust emergency response plans in place, including having necessary spill containment equipment on board and clear procedures for responding to accidents involving hazardous materials. This preparedness reflects the heightened duty to protect the public and the environment from potential harm.

79. Wabash National Corporation and Brenner had a duty to sell its customers tankers that were free from known defect.

80. Wabash National Corporation and Brenner had a heightened, as described above, to sell its customers tankers that were free from known defect.

81. Wabash National Corporation and Brenner breached their duty by wantonly selling tankers equipped with valves that had a history of being defective to Gulf Coast Express.

82. Gulf Coast Express had a duty to lease tankers that were free from known defect to its affiliate company, Quality Carriers.

83. Gulf Coast Express had a heightened duty, as described above, to lease tankers that were free from known defect to its affiliate company, Quality Carriers.

84. Gulf Coast Express breached its duty by wantonly leasing tankers fitted with valves that had a known history of being defective to its affiliate company, Defendant, Quality Carriers.

85. Quality Carriers had a duty to use tankers free from known defect when it hauled hazardous materials and to haul them safely and in a manner that did not harm others.

86. Quality Carriers had a heightened duty, as described above, to use tankers free from known defect when it hauled hazardous materials and to haul them safely and in a manner that did not harm others.

87. Quality Carriers breached its duty by wantonly using a tanker fitted with a valve known to fail when hauling hazardous materials such as nitric acid and hauled those materials in an unsafe manner. Quality Carriers further breached its duty by wantonly not handling the leaking Girard valve in a safe manner.

88. Jennings had a duty to haul his load safely and to follow safety protocols when he was informed of a potential failed and leaking valve while hauling nitric acid.

89. Jennings had a heightened duty, as described above, to haul his load safely and to follow safety protocols when he was informed of a potential failed and leaking valve while hauling nitric acid.

90. Jennings breached his duty when he wantonly did not contact Skytank, when he wantonly hauled a tanker full of nitric acid knowing it had a defective valve and when he pulled the external valve while at the shop in Creola, Alabama.

91. All Defendants had a duty to not put into the stream of commerce defective valves or tankers equipped defective valves when used in conjunction with transporting hazardous materials, to wit, nitric acid.

92. All Defendants had a heightened duty, as described above, to not put into the stream of commerce defective valves or tankers equipped defective valves when used in conjunction with transporting hazardous materials, to wit, nitric acid.

93. Defendants breached that duty by wantonly placing into commerce and/or using a tanker fitted with a valve that had a known history of being defective.

94. Defendants' wantonness proximately caused the spilling of over 5,000 gallons of nitric acid in Creola, Alabama.

95. Defendants' wantonness proximately caused injuries and damages to the Plaintiff.

96. Plaintiff suffered injuries and damages as set out in the factual allegations of this complaint including physical injuries, damage to property, and economic loss.

97. Plaintiff seeks recovery for all damages and losses proximately caused by the Defendants' nitric acid spill.

WHEREFORE, premises considered, Plaintiff seeks to recover all damages stemming from such wantonness, including all applicable compensatory damages, punitive damages, plus legal interest and fees.

### THIRD CAUSE OF ACTION

**BREACH OF WARRANTY OF MERCHANTABILITY**

**AGAINST DEFENDANTS WABASH NATIONAL CORPORATION, BRENNER TANK, LLC, AND GIRARD EQUIPMENT, INC.**

98. An implied warranty of merchantability existed when Girard sold its tank trailer valves to Wabash, Brenner, and to Gulf Coast Express Carriers and to Plaintiff.

99. An implied warranty of merchantability existed when Wabash and Brenner sold its tanker trailers to Gulf Coast Express Carriers.

100. The Girard valves and the Wabash and Brenner tanker trailers had a defect that made them unfit for their ordinary purpose in that there was defect in their manufacturing and/or design, and Wabash and Brenner failed to adequately warn that the Girard valves and the Wabash and Brenner tanker trailers fitted with the Girard valves had a known defect, especially when used in conjunction with hauling nitric acid.

101. Plaintiff suffered injuries and damages as set out in the factual allegations of this complaint including physical injuries, damage to property, and economic loss as a direct and proximate cause of the defective valves and defective tanker trailers and the listed defendants' breach of warranty of merchantability.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Respectfully submitted,

/s/ Christopher A. Callaghan
Christopher A. Callaghan (CAL074)
/s/Christine Hernandez
Attorney for Plaintiff (HER051)
/s/Brooke Kelly
Brooke Kelly (POA001)
The Hernandez & Associates Firm, LLC
Attorneys for the Plaintiff
1850 Airport Boulevard
Mobile, AL 36606
Telephone (251) 479-1477
Fax (251) 650-0843
callaghan@equalizingjustice.com

christine@equalizingjustice.com
brooke@equalizingjustice.com

*/s/ Nicholas Heath Wooten*
Nicholas Heath Wooten (WOO084)
Attorney for Plaintiff
DJC LAW, PLLC
1012 W. Anderson Ln.
Austin, TX 78757
Telephone (512) 220-1800
Fax (512) 220-1801
nick@teamjustice.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and/or U.S. Mail service will be perfected upon the following on this the 23rd day of September, 2024

Russell C. Buffkin
Karen L. Tucker
Helmsing Leach Herlong Newman & Rouse, P.C.
P.O. Box 2767
Mobile, AL 36652
*Attorneys for Brenner Tank, LLC*

Dennis Oscar Vann, Jr.
Thomas W. Oliver, II
Carr, Allison, Pugh, Oliver & Sisson, P.C.
100 Vestavia Parkway, Suite 200
Birmingham, AL 35216
*Attorneys for Quality Carriers, Inc.*

Jeremy Patrick Taylor
Carr Allison
6251 Monroe Street, Suite 200 Daphne, AL 36526
*Attorneys for Quality Carriers, Inc.*

Adam M. Milam
Milam & Milam, LLC
20252 Highway 181, Suite C Fairhope, Alabama 36532
*Attorney for Girard Equipment, Inc.*

Sean W. Shirley
Johnny L. Banks, III
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500 Birmingham, AL 35203
*Attorneys for Gulf Coast Express Carriers*

William Steele Holman, II
Speegle, Hoffman, Holman & Holifield, LLC P. O. Box 11
Mobile, Alabama 36601
*Attorney for Michael Jennings*